UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LUKE LARONG HARRIS,

                Petitioner,

                                                   Case Number 06-20615-BC

v.                                                    Honorable Thomas L. Ludington

UNITED STATES OF AMERICA,

                Respondent.

_____/


**ORDER OVERRULING PETITIONER'S OBJECTIONS, ADOPTING REMAINDER OF REPORT AND RECOMMENDATION, DENYING PETITIONER'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255, DENYING AS MOOT PETITIONER'S MOTION FOR FREE TRANSCRIPTS, DENYING PETITIONER'S MOTION FOR EVIDENTIARY HEARING, AND DENYING AS MOOT PETITIONER'S MOTION TO CLARIFY CLERK'S CORRESPONDENCE AND MOTION FOR COURT TO COMPLY WITH FEDERAL RULES OF CIVIL PROCEDURE**

On October 2, 2007, this Court held a sentencing hearing as to Petitioner Luke Larong Harris; and on October 7, 2007, this Court entered a criminal judgment against Petitioner. On February 3, 2010, Magistrate Judge Charles E. Binder issued a report and recommendation [Dkt. # 79] recommending that Petitioner's pro se "motion to vacate sentence under 28 U.S.C. § 2255" [Dkt. # 66], as supplemented [Dkt. # 64], be denied because Petitioner filed his motion after expiration of the one-year statutory period of limitations. Judge Binder explained that a petitioner "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citations omitted). Judge Binder concluded that Petitioner did not meet these requirements, primarily based on Petitioner's "duty to monitor the status of his appeal." *Brown v. United States*, 20 F. App'x 373, 375 (6th Cir. 2001). In light of the conclusion

that the § 2255 motion should be denied as untimely, Judge Binder also recommends that Petitioner's motion for free transcripts [Dkt. # 68] be denied as moot.

On March 10, 2010, the government filed objections [Dkt. # 86] to the report and recommendation. Petitioner did not respond to the government's objections. On May 21, 2010, the Court sustained the government's objections, which simply clarified the scope of Judge Binder's report and recommendation, but did not implicate the merits or timeliness of Petitioner's § 2255 motion. *See* [Dkt. # 93].

In addition, on or about April 1, 2010, Petitioner filed objections [Dkt. # 90] to the report and recommendation, with the assistance of a jailhouse lawyer. The same day, Petitioner also filed a motion for an evidentiary hearing [Dkt. # 91]. The government did not file responses. Petitioner asserts that his "well documented mental impairment qualifies as, and is patently demonstrative of an 'extraordinary circumstance' that effectively prevented him from both diligently monitoring the progress of his requested appeal; and from filing a § 2255 petition." In particular, Petitioner attached to his motion for an evidentiary hearing a two-page excerpt from a presentence investigation report prepared June 12, 2007. Petitioner highlights that as of 2001, he was diagnosed as having "schizophrenic disorder, paranoid type, chronic, childhood onset."

In its prior order [Dkt. # 93], the Court directed the parties to provide supplemental briefing regarding the issues raised in Petitioner's objections. *Harris v. United States*, No. 06-20615, 2010 WL 2079533, at *2 (E.D. Mich. May 21, 2010). The Court explained as follows:

> Significantly, "mental incompetence is not a *per se* reason to toll a statute of limitations." *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008) (citations omitted). "Illness - mental or physical - tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period." *Price v. Lewis*, 119 F. App'x 725, 726 (6th Cir. 2005); *McSwain*, 287 F. App'x at 456 ("[T]he petitioner must make a threshold showing of incompetence and must also demonstrate that the alleged incompetence affected

her ability to file a timely habeas petition."). In other words, a petitioner must "establish a causal connection between her mental condition and her ability to file a timely petition." *Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005) (per curiam). To be entitled to an evidentiary hearing on the issue, a petitioner must advance factual allegations, which, "if true, would show that her mental illness prevented her from timely filing her habeas petition." *McSwain*, 287 F. App'x at 458.

*Id.*

The Court noted that the limited factual allegations advanced by Petitioner from the presentence investigation report did not justify an evidentiary hearing. *Id.* The general fact that Petitioner was diagnosed with a mental illness in 2001 did not sufficiently explain why Petitioner did not file his § 2255 motion at any time after his conviction became final in October 2007 until December 14, 2009. *Id.* In other words, Petitioner did not demonstrate the necessary "causal connection" to justify equitable tolling. *Id.* Thus, in his supplemental briefing, Petitioner was directed to identify all of the facts and documentation that he believes substantiate his allegations of mental illness and that the mental illness prevented him from timely filing his § 2255 motion. *Id.*

Now before the Court are Petitioner's supplemental brief [Dkt. # 96, June 22, 2010], and the government's response [Dkt. # 97, July 12, 2010]. In his supplemental brief, Petitioner explains the way in which his mental illness prevented him from timely filing his § 2255 motion as follows:

> The majority of Harris' first two years in prison were spent in isolated confinement in the prison's special housing unit (SHU). During this period all Harris could do was wait for his criminal lawyer to file his requested appeal, as said lawyer assured Harris he would do sometime within the next year. Harris refrained from calling the lawyer, due to his paranoia that he would only upset the lawyer and thus adversely affect the quality of his appellate brief. Eventually, as a result thereof, chronic depression seeped in. Harris refused to take any medication for this depression - because again his paranoia kicked in and led him to believe that any medication he took would be laced with poison, as retribution from the BOP officials for Harris' unruly conduct and outbursts.

Pet'r Br. 2.

Petitioner further explains the nature of his mental illness as follows:

> In the case at bar, Harris' mental illness has never abated nor shown any signs of going into remission. In fact, Harris' atypical conduct in prison shows just the opposite: (1) Harris only showers once a month out of unjustified paranoia that he might be sexually assaulted in the shower; and because he believes the worst (sic) he reeks of unpleasant body odor, the less likely a sexual predator will attempt to mate with him; (2) Harris suffers from extreme delusions of grandeur such as the belief that he was once the head of a powerful and untouchable Mafia organization; and that he was a prominent and famous rapper who was framed and wrongfully convicted.

*Id.* 3-4. Petitioner also emphasizes that it is "the fundamental nature and truth of mental illness itself - in that it is not something that can simply be turned on and off like a light switch." *Id.* 1 (capitalization altered).

In response, the government highlights provisions of the presentence report that Petitioner did not advance. While Petitioner highlights that as of 2001, he was diagnosed as having "schizophrenic disorder, paranoid type, chronic, childhood onset," *see* PSR ¶ 82, the government notes that the presentence report also documents the fact that in September 2005, Petitioner underwent a psychiatric examination at the Center for Forensic Psychiatry in Ann Arbor because Petitioner claimed that he was having hallucinations, *id.* ¶ 89. The examiner found that Petitioner's claims did not appear consistent with phenomenonology of hallucinations. *Id.* ¶ 90. Further test results showed that Petitioner marked the test in a manner similar to that of a person who "fakes bad" and that he endorsed a high frequency of symptoms that were atypical of patients with genuine psychosis disorders. *Id.* ¶ 91. The test also revealed that Petitioner appeared to exaggerate intellectual deficits and affective problems. *Id.* At the time of sentencing, no objections were filed to the presentence report.

The government also advances the affidavit of Dr. Jill Roth, who has treated Petitioner since his arrival on September 22, 2008, at FCI Yazoo City Medium. She states that prior to Petitioner's incarceration, in 2001, he was diagnosed with schizophrenia following a head injury. Roth Aff. ¶

3. Since sometime prior to his placement in the Bureau of Prisons, he had not been prescribed medication for the condition. *Id.* ¶ 4. On April 1, 2010, Petitioner was prescribed Depakote "for his temper, mood instability, and back pain issues." *Id.* ¶ 5. Dr. Roth indicates that Petitioner is "currently diagnosed with Depressive Disorder, not otherwise specified, Schizoid Personality Disorder, and Antisocial Personality Disorder," *id.* ¶ 7, but "does not currently meet the diagnostic criteria for Schizophrenia," *id.* ¶ 6. Dr. Roth states that Petitioner's disorders "are not judged to significantly disrupt his faculties" and that Petitioner "understands deadlines and performing assignments to complete tasks, as evidenced by his completion of seven groups in the Psychology department." *Id.* ¶ 6, 7. Dr. Roth opines that Petitioner's "mental condition should not impair him from timely filing paperwork." *Id.* ¶ 8.

Even ignoring the additional provisions of the presentence report advanced by the government and Dr. Roth's affidavit, Petitioner has not advanced factual allegations, which, "if true, would show that h[is] mental illness prevented h[im] from timely filing h[is] habeas petition." *McSwain*, 287 F. App'x at 458. While Petitioner alleges odd behavior caused by paranoia, he does not explain how the paranoia prevented him from timely filing a habeas petition. He explains that he "refrained from calling" his defense lawyer "due to his paranoia that he would only upset the lawyer and thus adversely affect the quality of his appellate brief." Yet, that only tends to explain why he did not timely file an appeal, not why he did not file this § 2255 motion for over two years after his conviction became final. Petitioner is not entitled to an evidentiary hearing, or equitable tolling of the statute of limitations on his § 2255 motion because he has not sufficiently alleged that any mental illness "actually prevent[ed him] from pursuing his legal rights during the limitations period." *Price*, 119 F. App'x at 726.

Also before the Court are Petitioner's motion to clarify Clerk's correspondence [Dkt. # 88] and motion for Court to comply with Federal Rules of Civil Procedure [Dkt. # 89]. These motions arise out of Petitioner's assertions that the Clerk of the Court did not mail, and he did not receive, a copy of Judge Binder's report and recommendation [Dkt. # 79]. Petitioner requested a copy of the report and recommendation from the Clerk's office and the Clerk's office sent him a billing invoice. As the Court previously noted, *see* [Dkt. # 97], Judge Binder's law clerk certified that a copy of the report and recommendation was sent to Defendant at FCI Yazoo City Medium, and the report and recommendation was never returned to the Court as undeliverable. Despite those facts, out of an abundance of caution, the Court mailed another copy of the report and recommendation to Petitioner. In light of that fact, and the fact that Petitioner was able to file objections to the report and recommendation, the pending motions will be denied as moot.

Notably, however, a party is only entitled to receive, free of charge, one copy of a court document. It is not the usual practice of this Court to mail additional copies of court documents. Rather, the Clerk's office will regularly charge a party for any additional copies requested, even if such copies are requested so that a party may obtain legal assistance from another individual.

Accordingly, it is **ORDERED** that Petitioner's objections to the report and recommendation [Dkt. # 90] are **OVERRULED**.

It is further **ORDERED** that the remainder of the report and recommendation [Dkt. # 79] is **ADOPTED**.

It is further **ORDERED** that Petitioner's motion to vacate sentence under 28 U.S.C. § 2255 [Dkt. # 66], as supplemented [Dkt. # 64], is **DENIED**.

It is further **ORDERED** that Petitioner's motion for free transcripts [Dkt. # 68] is **DENIED**

**AS MOOT**.

It is further **ORDERED** that Petitioner's motion for evidentiary hearing [Dkt. # 91] is **DENIED**.

It is further **ORDERED** that Petitioner's motion to clarify Clerk's correspondence [Dkt. # 88] and motion for Court to comply with Federal Rules of Civil Procedure [Dkt. # 89] are **DENIED AS MOOT**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 14, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 14, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS
